May it please the Court, good morning. My name is Adina Johnson. I represent the appellant United Fire & Casualty Company. I think United Fire's argument can best be summarized today with two words, Doe Run. What were the words? Doe Run. I don't know what those words are to them. I would like to explain that. What are the words? By Doe Run I'm referring to the Doe Run cases that were decided by this Court in June of 2015. 2013. In the Doe Run cases that involved, also involved the pollution exclusion, which is what is at issue in this case. This is an insurance coverage case dealing with the pollution exclusion and the language of the pollution exclusion in this case is the exact same language that was at issue in the 2004 to 2006 policies that were at issue in the Doe Run cases. In those Doe Run cases this Court decided that that exact same language was not ambiguous as to the underlying allegations in those complaints. The same is true in this case. United Fire's appeal is based on three points. Number one, the policy excludes coverage for the underlying claims against Titan. Number two, as this Court decided in the Doe Run cases, the Hucker Oil case on which Titan and the District Court relied is not controlling precedent. Number three, the policy unambiguously allows United Fire to seek reimbursement of defense costs in this case. As to point one, the pollution exclusion in this case is unambiguous and it excludes claims for bodily injuries that are caused by exposure to a pollutant. Pollutant is defined in this policy, just like it was in the Doe Run cases, as an irritant or contaminant and that includes fumes which are at issue in this case. Well, I guess the issue that seems to be this difficult about this case is that when you use a product that's commonly used within your business, should it necessarily be expected that all coverage for use of that product would be excluded? And I'm thinking of a cleaning business, which is basically what they are. Practically everything they use, every one of their cleaning products is probably an irritant. So every one of their products is probably a pollutant under your definition. So if you were to take soap, which if I got in my eyes, I assume it would irritate it, so it would be an irritant. So if you spilt a bucket of soapy water on the floor and somebody slipped and fell, under your theory, the pollution exclusion would exclude coverage, right? I don't believe that that's correct, no. Why? What, this court dealt with a similar argument, I believe, in the Doe Run cases. What the exclusion, you're correct, says irritant and in other jurisdictions like Illinois, where they treated the exclusion as only applying to traditional environmental pollution, that's one of the arguments that's made. In this case, first of all, just to also explain that not all their products are irritants. As a matter of fact, after this incident happened, they went to a water-based sealant so that they could get away from that problem. So they did have a choice between concrete sealants that would cause this problem and those that wouldn't. But in this case, and I think that this goes to point two about Hawker Oil, because what the district court said about Hawker Oil is that, what I believe you're saying here, the point that you're making here is that a company that uses a product like this should reasonably be able to expect that any claims related to that are covered. What this court focused on in the Doe Run cases was it said that what Hawker Oil did, for one thing, Hawker Oil was limited because it was dealing with gasoline. But what Hawker Oil did was it focused on gasoline as a product and not on its toxic effects after it was accidentally released. And that's the same thing the district court did here. It said TIA, the floor sealant that was used, was their product. And it focused on that. But what this court said in the Doe Run cases is said that you can't stop there. Yes, it's a product when it was applied to the floor. But when those fumes escaped and injured the three women in another area, then it became a pollutant there. So yes, it was a product there, like all their other products. It might be a product. But once it escaped into the environment and it went and injured those people, then it became a pollutant. TIA is a product, unlike soap in a soap bucket, TIA is a product that has product data sheets and material safety data sheets that clearly said, that outlined the health hazards, that clearly said- Well, if you go down a supermarket aisle and pull a bottle of Lysol off the shelf, you'll see a product warning, don't get it in your eyes. It'll irritate your eyes. So why is the soap that is going to, if you inhale it, ingest it, get it in your eyes, it's going to irritate and maybe make you very sick. Under your definition, that's a, whether it's got a product data sheet or not, it's a pollutant. And so if you spill it on the floor and somebody falls, under your theory, it's, they're not covered. Well I, if they slip on the floor, on the soap on the floor, I don't think that they're being, they're not injured by the release of a pollutant into- They're injured because they spilled the soapy water on the floor. Right. I don't think that that would fit that definition of suffering a bodily injury from being exposed to soapy water in the sense that it would irritate, as TIA does in this case, it irritates the eyes, nose, throat, and skin. And Titan knew that they testified that they were familiar with these, with the material safety data sheets and the product sheets. They knew that in this case, they were dealing with TIA, they knew that they had to use a mask and they admitted that ventilation for this product was very important. So in looking at the facts of this case, could they reasonably expect that a product, and I think that the two terms are used interchangeably in terms of whether they reasonably expected it or reasonably could understand. And what this court said in the Doe Run cases is that the, the, excuse me, in the Keller case, what the court said was, Keller versus American Family, is that when you're dealing with reasonable expectations, the insured has to look not just at the policy provisions, but at the, excuse me, the exclusions as well. They have to read the policy as a whole. But what's, what do you reasonably, I guess now you're in, okay, so you look at the policy and say there's a pollution exclusion that covers irritants and therefore what do you reasonably expect at that point? What is the policy holder supposed to think at that point? That any product that they have that's an irritant that causes an injury is not covered? Correct. If they have a product that they use and when it's used improperly or when it escapes and it causes. Well this was not used improperly, it was used properly. It was used properly, it was not vented properly. So in essence it was not used properly because they did not, my understanding is they did not take the correct ventilation procedures to make sure that those fumes didn't escape back into the rest of the office building. But yes, if they read this policy, which they're required to do, and it excludes bodily injuries caused by exposure to a product that irritates the skin, eyes, nose, and throat, then yes they could reasonably expect that those claims would be excluded. Are you, what leading, what case do you cite from Missouri as your best authority? I believe my best authority is from the, in addition, besides the Doe-Run cases. Besides the Doe-Run cases that were decided by this court, this court applied Missouri law in the Doe-Run cases. And I believe those two cases spell out very specifically that the reasonable, a policy coverage is determined by comparing the allegations of the complaint with the policy language. And in this case there's no dispute that the allegations are for bodily injuries caused by exposure to the chemical TIA. And TIA, the evidence shows, causes irritation to nose, throat, skin, and so forth. There's not a dispute about that. What we're arguing is that comparing the policy to the allegations should determine coverage. The district court held that coverage is determined not by that analysis, but by looking at the reasonable expectations of the policy holder. We rely on Doe-Run for the premise or the upholding of Missouri law, which is that the analysis is comparing the allegations to the policy. Obviously, I've never run into a case where an insured walked in and said, oh yeah, I didn't expect that claim to be covered. They all expect them to be covered. Well, it's a reasonable expectation. Correct. And like in the Keller case, that reasonable expectation has to be based on reading the policy as a whole. We'd all like to read the coverage parts and ignore the Missouri law. No, you've got to read the coverage as a whole, too. That's, yes. Yes, sir. I think that another point in the Doe-Run case that perhaps goes to your question is that what was pointed out in Doe-Run 1 is that because a product is a valuable product, whether it's soap or whatever the product is, doesn't make it any less a pollutant when it's released into the environment. That was the holding in Doe-Run 1. This court also noted in the Doe-Run cases that a focus on hawker oil was a focus on the item as a product as opposed to its toxic characteristics. And that's what the district court did in this case. It focused on whether teal was a product, which it was when it was applied in the warehouse floor, rather than focusing on the toxic characteristics when it was released into the area where those three women were injured by it. No, I still don't. Are you citing cases that are not in your brief? No, those are in our reply brief, Your Honor. They were decided, the Doe-Run case, they're cited in our initial brief when they were at the district court level, and then they're cited, this court's opinions are cited in our reply brief because those were decided after we had begun briefing in this case. Why does the rider that allows you to get reimbursement for litigation expenses says it's an Illinois rider? What does that mean? What the endorsement that you're referring to... What does it mean when you say, when it's a Missouri case with Missouri law and everything and it's an Illinois rider? What's the significance? In other words, why put Illinois on it? Why didn't you just say you get reimbursed for litigation expenses? Why does it say Illinois? I will admit that there's a limited record on this because we didn't deal with this with regard to that endorsement. But what I will tell you, there's an affidavit from our underwriter there that addresses it somewhat. But what I will tell you, and again, this is not reflected in the record because we didn't really get to this. So should we remand on that issue? If we agree with you on the other part, do we need to remand on the attorney's fees? Because I don't understand what it means by Illinois and why it says Illinois, why you just didn't say you get it back. And what I understand is that underwriting works sort of like working with Mr. Potato Head. They start with the potato, which is all the coverage parts, and then they look at the risks and these different coverage parts come in. So, for example, the Missouri changes, the Illinois changes, those various endorsements come in based on the risk. Underwriters aren't looking at whose coverage law applies. They're looking at where the risk is. In this case, there was risk in Missouri and there was risk in Illinois. And what happens is that when those risks come up, that triggers the addition of these particular forms. But in that endorsement, there's no mention. I mean, it says Illinois changes at the top, but then it says this endorsement changes or modifies these coverage parts. And those are the general liability and the umbrella liability, which are the coverage parts that are being relied on here. And what that says very clearly is that under this set of circumstances, and in this case, the underlying case is being considered under Illinois law. I thought it was considered under Missouri. Why are we talking about Missouri law? The coverage case was decided under Missouri law, Your Honor. I'm sorry if I was confusing there. The underlying case is being litigated in Madison County, Illinois, under Illinois law. The coverage case was decided under Missouri law because Titan is actually a Missouri corporation that does business in Illinois. Doesn't the provision allowing recovery of defense costs require that your reservation of rights letter specifically mention the reservation of the right to seek defense costs? I'm sorry. I'd have to go take a look at that again. I don't remember that particular provision. May it please the Court. There's nothing unclear about the law to be applied in this case. The longstanding rule under Missouri law is that language of a policy is tested for ambiguity with reference to the reasonable understanding of the insured who bought and paid for the policy. And, in fact, that rule of law is stated in some formulation in the majority of the cases on which United Fire relies for the proposition that the exclusion is enforced literally. When you look at Doe Run, it says that Hawker Oil would not necessarily be extended by the Missouri Supreme Court on the facts of that case under Doe Run's argument. And that's because this is a case of traditional environmental pollution. It's lead tailings, lead concentrate that's been released into the environment. So this is a different case. I'm confused about something, and I don't mean to... As I understand your opposing counsel, she just said this was decided under Missouri law because Titan Services is a Missouri corporation. This was decided under Missouri law. But I'm just looking at your reply brief, and you set out all kinds of allegations that it's an Illinois corporation. Your Honor, I would have filed the responsive brief. The reply brief wouldn't have been mine, but... Okay. All right. Okay. I'm sorry. But is it... Okay, you're right. Your opposing counsel filed the reply brief, but they're quoting from the... I think they're quoting from the complaint. And the majority of the risks that were being insured were in Missouri, and that's why the district court ended up applying Missouri law. But if it's a Missouri law being litigated... Excuse me, an Illinois law being litigated in an Illinois state court against an Illinois corporation, why is it we apply Missouri law? The coverage issue was to be determined under Missouri law. And why? That's what I'm asking. Because the district court at least concluded that the majority of the risk insured under the policy, the majority of Titan's business operations, took place in Missouri. And for that reason, Missouri law governed it, had the most significant relationship with... But if it's a Missouri... But is it an Illinois corporation? Yes. Titan is. With its place of business in Missouri, I believe. I didn't understand that the district court applied Missouri law, and I didn't understand, although the Illinois cases were cited by the opponent, I did not understand that there was any exception made to that ruling by the district court that Missouri law applied. That's right, and, Your Honor, I think really the choice of law is irrelevant. The most recent pronouncement by the Missouri Court of Appeals on the pollution exclusion actually cites to Columns, which is the Illinois Supreme Court case that was relied on in the underlying briefing, and the rules of construction on contracts are the same, essentially, in both Missouri and Illinois. So regardless, I don't think it makes much of a difference. Under Illinois law, it's very clear that the pollution exclusion only applies to traditional environmental claims, and if that's the case, this claim is not covered, this release of TIAA. I didn't get a chance to read the Doe Run, or two cases in the Eighth Circuit. Are those cases contrary to your position? They're not, Your Honor, because they did occur in the context of traditional environmental pollution. This was lead or lead concentrate. So it's distinguishable. Right, that's right, and not only that, but that dealt with discarding or abandoning lead concentrate, and those verbs relate to intentional conduct. If I discard something, I've thrown it away on purpose. If I've abandoned it, the original loss of it may not have been intentional, but I've made a conscious decision not to attempt to reclaim it. So a lay-insured who bought and purchased that policy would not think of a discarded material as its product. But in United Fire of the Titan, in this case, Titan was using this product on a regular basis in the course of its business operations. It was ubiquitous in the environment in which it worked. So if it allows a vapor or a fume to escape, and that is an irritant, which I don't think there's any dispute about, why isn't that traditional pollution? Traditional environmental pollution in the terms that the courts have talked about it would be things like oil spills. So when I say it's not traditional environmental pollution, that's what I mean. As far as why that wouldn't constitute an irritant under the policy, it comes back to the standard under Missouri law, which is that the language of the policy has to be assessed for ambiguity in terms of the understanding. And that's really my question. You can't say because my client interpreted it to be some particular way, therefore it's ambiguous. That can't be the law. No, and it's not. It has to be a reasonable interpretation by the lay-insured. And in this case, copper oil— Okay, so given here that it defines pollution in terms of vapors and fumes that are irritants, why is it ambiguous? Because virtually no substance would not qualify as either an irritant or contaminant under some circumstance. From Windex down to dead skin cells, it could be an irritant or a contaminant. So there has to be some limitation placed on the language of the exclusion. And Missouri hasn't chosen to restrict it so much that it only applies it to traditional environmental pollution, but it hasn't also allowed an unfettered application of that language. What it's done is it's chosen a middle ground, like the district court said, a common-sense approach to this exclusion. And what it's done is it's applied the lay-insured's understanding, reasonable understanding, of that policy language. And hopper oil wasn't so much concerned with the fact that this was a product. Hopper oil was concerned with the fact that gasoline in that case was so common in the environment in which hopper oil operated that they could not have reasonably viewed it as anything— But in Doe Run, weren't we very skeptical of the possibility that the Missouri Supreme Court would adopt hopper? You were, but since Doe Run, why it has come down and why it reinforces— Another court of appeals decision. That's true, Your Honor, but in addition, Doe Run itself, again, occurred in a very different context. First, there was the issue of intent. So because they discarded or abandoned it, and that was intentional at that point, that, in short, would not have viewed that any longer as its product, whereas in this case, it was not intentionally abandoned. The product was being used as it was meant to be used in the ordinary course of the insured's business, and it still considered it its product at that point. Although, arguably, the improperly vented fumes would not be. The fact is that it has to come back to what the insured considered about the product it was properly using, and it was properly using the sealant in this case. The testimony below, actually, is that the improper venting may have occurred after Titan left the premises. Titan applied the floor sealant. There is no record on the ventilation that occurred at that time. There was apparently a garage door that was closed after they left the premises. So whether or not there was proper ventilation isn't really before the court. We don't know at the time that the sealant was being applied. What is clear is that Titan couldn't have considered TIA anything other than its product, not an irritant, not a contaminant. It had used it regularly without any issue. Under those circumstances, it's just like me washing a window with Windex. I know it has irritating chemicals in it, but to me it's just a cleaning product. Well, I think, what is your best argument as to why Dole Run would support your position? And I guess what I'm looking, I guess I'll maybe help make the argument for you, but is this language in the second Dole Run case at 881, 882 and over about, the allegation in the second Dole Run case was that they negligently allowed for the distribution of chad containing high levels of lead and other toxic substances to the general public. So is that what you're saying is comparable to what happened in this case? Well, in Dole Run 2, Your Honor, the court labeled it a classic claim for damages caused by environmental pollution, too. And I think that's the key distinction between Dole Run and this case, is that in Dole Run, we've got traditional environmental pollution, which no reasonable insured could consider as anything other than a pollutant. Dole Run was not addressing the irritant or contaminant language in the pollution exclusion. So in order to understand how Missouri courts apply it, we need to look to case law that does. Hacker oil is one such case, but there are others that address the irritant or contaminant issue. Pipe fitters, which is out of the Seventh Circuit, but which applies Missouri law, the court in that case said, the terms irritant and contaminant when viewed in isolation are virtually boundless, for there is virtually no substance or chemical in existence that would not irritate or damage some person or property. Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope and lead to some absurd results. And that would be the case. What happened, though, is Missouri developed an appropriate limiting principle, and that limiting principle has been routinely applied from Hacker oil to German St. Vincent, to Herringer in 2004, and Wyatt again, of course. And that standard is that we have to assess this language for ambiguity in terms of what the reasonable insured would have understood that language to mean. And in this case, Titan would not have considered TIA to be an irritant or contaminant. It was simply too common in the environment in which it worked. And it was entitled, under Hacker oil, said the insured is entitled to characterize a substance in terms of its daily activities, its use of that substance. Titan used the substance regularly and routinely in its operations. So just because it's regular and routinely used, you're saying that means that it's now reasonable for them to think that it's not a pollutant? I think it's a contextual analysis, and not all cases where something is regularly used means it's not a pollutant. That's why you get cases such as German St. Vincent, which also interpreted the irritant-contaminant language, but it said friable asbestos, every reasonable insured knows that that is pollution. There's no question. Isn't xylene the underlying product here, and isn't that sort of, wouldn't anybody know that it's material data, safety sheet says it's dangerous, that sort of thing? Wouldn't it be reasonable under those circumstances for the insured to think, yeah, this is a pollutant? Xylene is a small portion of the product as a whole, so I think we do have to look at the product, for one. But for another, and more pointed, because Titan used it regularly, without incident, it no longer considered it an irritant or contaminant. Did it know it had irritating properties? Yes, but virtually everything does. But when used in a proper manner, that never became an issue for Titan in the past. So it was reasonable for it to believe this is not an irritant or contaminant as the language in the policy dictates or is meant to. Here, there's got to be something intrinsic that makes it irritant or contaminant. So it's kind of governed by what you normally consider pollution or a contaminant under ordinary circumstances. You can have people be irritated by purely harmless items many times if they've got some kind of an allergy. And that's certainly true, and I think Wyatt addressed that point. Wyatt said that no reasonable insured would interpret the phrase irritant or contaminant beyond kind of the common understanding of what's a pollutant. But xylene is classified as a pollutant under the Clean Air Act, isn't it? It is, and just because something is not federally defined as a pollutant doesn't preclude it from being covered by the exclusion. The converse is true, too. Just because something is defined as an irritant or contaminant doesn't mean it necessarily falls within that exclusion because, once again, a host of products have product safety sheets or material safety data sheets. And if that were the standard, then these claims would really explode. Missouri's attempted to cabin it by applying the reasonable understanding of the insured. That's the standard in Missouri. It's a standard that has caused a variety of results, some cases where it looks very much like traditional exclusion. The insured's understanding renders it not pollution. Other cases it's the opposite. Has the Missouri Supreme Court given us any help? They have not on this issue yet. The intermediate appellate court decisions are really what this court has to work with in this case, in addition to Doe-Run, but because Doe-Run is distinguishable, I think the best cases are those intermediate appellate court cases, and they've consistently applied this standard. It's cited in the vast majority of them, and I think it's the standard that should be applied here, and we would ask this court to affirm the district court on that basis. Was there any attempt made, if you were aware, to get the Missouri Supreme Court to take a look at Wyatt? It's almost a year old now, so probably not. I'm actually not aware. Thank you. Okay. Does Ms. Johnson have rebuttal time? We'll give you a minute. Thank you, Your Honor. I would just answer that question. I did check the Missouri Supreme Court denied transfer on the Wyatt case, and I would also just like to point out that the Wyatt case relies on cases out of North Carolina, Indiana, Sixth Circuit, and so forth for its opinion rather than Missouri authority. Thank you. Counsel, we appreciate your arguments. The case will be submitted, and we'll decide it in due course. Mr. Hagan, does that complete our docket this morning? It does, Your Honor.